| | |
|---|---|
| **DISTRICT COURT, CITY AND COUNTY OF DENVER, STATE OF COLORADO** | DATE FILED: October 30, 2018 3:17 PM FILING ID: 7DCAC8F174D06 CASE NUMBER: 2018CV34035 |
| **Court Address: 1437 Bannock Street, Rm 256 Denver, CO 80202** | |
| ———————————————————— | |
| Plaintiff: | |
| NANCY MILLER, | |
| v. | ☐  COURT USE ONLY  ☐ |
| Defendant: | |
| COMMVAULT SYSTEMS, INC. | |
| Attorneys for Plaintiff: | Case No. |
| J. Mark Baird Beth Doherty Quinn BAIRD QUINN LLC *The Bushong Mansion* 2036 E. 17th Avenue Denver, CO 80206 T: 303.813.4500 F: 303.813.4501 jmb@bairdquinn.com bdq@bairdquinn.com | Division/Courtroom: |
| **PLAINTIFF'S COMPLAINT AND JURY DEMAND** | |

Plaintiff Nancy Miller, by and through her attorneys, Baird Quinn LLC, states and alleges her Complaint against Defendant Commvault Systems, Inc., as follows:

# EXHIBIT A

## I.   NATURE OF CLAIMS

1.     Plaintiff Nancy Miller ("Plaintiff" or "Ms. Miller") was employed by Defendant Commvault Systems, Inc. ("Defendant" or "Commvault") as a Senior Manager, Cloud Solutions Marketing, from about July 2014 through July 14, 2017.

2.     Defendant, through its agents, subjected Ms. Miller to unlawful discrimination due to her age, in violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 623(a)(1) ("ADEA"), and due to her gender, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et. seq.* ("Title VII"). Defendant also retaliated against Ms. Miller due to her complaints about Defendant's unlawful discrimination against her, in violation of the ADEA and Title VII.

3.     Defendant also failed to pay Ms. Miller her earned variable compensation in violation of Defendant's contractual obligations to Ms. Miller and in violation of the Colorado Wage Act, C.R.S. 8-4-101 *et seq.*

4.     This is an action for damages and other relief for the injuries suffered by Plaintiff due to Defendant's discriminatory and retaliatory conduct, in violation of the ADEA and Title VII, breach of its contractual obligations, and violation of the Colorado Wage Act.

## II.   PARTIES, JURISDICTION AND VENUE

5.     Plaintiff Nancy Miller is an individual residing in the State of Colorado at 645 Krameria Street, Denver, Colorado 80220.  Ms. Miller's date of birth is July 12, 1952.

6.     Defendant Commvault is a Delaware corporation with its principal place of business at 1 Commvault Way, Tinton Falls, New Jersey, 07724.

7.     At all relevant times, Plaintiff was an employee of Commvault within the meaning of Title VII, the ADEA and the Colorado Wage Act.

8.     At all relevant times, Commvault was an "employer" of Plaintiff within the meaning of Title VII, the ADEA and the Colorado Wage Act.

9.     This Court has jurisdiction over this case because Defendant conducted business, subjected Ms. Miller to discriminatory and retaliatory actions, breached its contractual obligations and violated the Colorado Wage Act within this judicial district.

10.     This Court is the proper venue for this action because Defendant conducted business, subjected Ms. Miller to discriminatory and retaliatory actions, breached its contractual obligations and violated the Colorado Wage Act within this judicial district.

11.     All procedural prerequisites for the filing of this suit have been met.  Plaintiff filed timely Charges of Discrimination (original and amended) alleging gender and age discrimination, and retaliation, against Commvault, with the Equal Employment Opportunity

Commission ("EEOC") and Colorado Civil Rights Division ("CCRD") and filed this action within ninety (90) days of receiving a Notice of Right to Sue from the EEOC.

## III.    GENERAL ALLEGATIONS

1.    In or about July 2014, Ms. Miller become employed by Commvault as Senior Manager, Cloud Solutions Marketing ("Senior Manager").

2.    Commvault is a publicly traded data protection and information management software company.  Commvault assists organizations with data backup and recovery, cloud and infrastructure management, retention and compliance.

3.    Commvault has very few women in senior management positions.  As a result, in mid-2015, Commvault started supporting Women in Technology, a professional association for women working in the technology industry.  Ms. Miller was very active at Commvault to support this initiative.

4.    As Senior Manager, Cloud Solutions Marketing, Ms. Miller was the sole person responsible for marketing to "Service Providers."

5.    Service Providers purchase cloud software licenses from Commvault and subsequently sell cloud data management, disaster recovery, and incremental products as a service to their customers.

6.    Verizon, Rackspace, Expedient, and Peak 10 are examples of Commvault Service Providers.

7.    As Senior Manager, Ms. Miller developed strategic marketing initiatives to augment Service Providers' efforts selling Commvault's cloud services to their customers and attempted to recruit and onboard additional Service Providers for the Company.

8.    As Senior Manager, Ms. Miller executed multiple joint marketing plans with Commvault Service Providers and managed the funding and budget reconciliation process for those initiatives for three years.

9.    Commvault management gave Ms. Miller Key Performance Indicators ("KPI") to objectively measure and evaluate her performance.

10.    Ms. Miller consistently achieved or exceeded the individual KPI's given to her.

11.    Commvault used the KPI's to evaluate the success of employees and the Company in achieving financial goals and business objectives.

12.    While Commvault did not give Ms. Miller any formal performance evaluations, she always received consistent positive feedback from her supervisors, peers and customers regarding her performance.

13.     In recognition of her significant contributions, Commvault gave Ms. Miller regular salary increases, bonuses, and Restricted Stock Units ("RSUs").

14.     Commvault did not subject Ms. Miller to any disciplinary action at any point during her employment.

15.     Commvault did not give Ms. Miller any performance counseling for any alleged poor or unsatisfactory performance at any time.

16.     In February 2017, Gaurav Malhotra, was hired by Defendant as Director of Service Providers and System Integrators, Global Partner Marketing.

17.     Mr. Malhotra is approximately 40 years old.  The position was not posted and Ms. Miller was not given the opportunity to interview for this position.

18.     After he was selected, Mr. Malhotra was directed to terminate Ms. Miller's employment.  He did not, however, terminate her at that time.

19.     After he was selected as Director of Service Providers and System Integrators, Ms. Miller started reporting to Mr. Malhotra.

20.     Neither Mr. Malhotra nor anyone else in Commvault management had a conversation with Ms. Miller about any "new" duties or role with Systems Integrators, nor was she provided with a new or revised job description.

21.     While Commvault claims that Ms. Miller's job responsibilities with System Integrators was changed, it did not change her job description to reflect duties different than those duties Ms. Miller had successfully performed throughout her employment.

22.     At the time Mr. Malhotra took over as Ms. Miller's manager in February, she had responsibilities for both Service Providers and Systems Integrators.

23.     Ms. Miller executed multiple projects with Systems Integrators on behalf of the Defendant and performed these duties in a satisfactory manner.

24.     In April 2017, Ms. Miller told Mr. Malhotra that she had significant experience working with Global Service Integrators ("GSI"), found the work interesting, and expressed interest in taking on added responsibility in this area as she had been performing that work for several months.

25.     Rather than allow Ms. Miller to continue working with System Integrators, Defendant took those responsibilities away from her and gave them to Bryan Broderick, a male employee about 40 years younger than Ms. Miller.

26.     Mr. Broderick was significantly less qualified than Ms. Miller for the Systems Integrator role.

27.     Prior to his selection, Mr. Broderick had most recently been employed as an intern at Commvault.

28.     During Commvault's Sales Kickoff in April 2017, Mr. Malhotra scheduled a "mandatory" meeting for all Global Service Provider Account Managers that was in direct conflict with a previously scheduled Women in Technology session.

29.     Mr. Malhotra refused to reschedule the "mandatory" meeting when it was brought to his attention.  As a result, key female Account Managers were unable to attend his presentation which covered the FY18 Service Provider route-to-market marketing plan.

30.     Mr. Malhotra further refused to allow Ms. Miller to attend the Sales Kickoff event, even though her peers in Marketing were in attendance.

31.     When Ms. Miller informed Mr. Malhotra that she was attending a one-day Colorado Technology Association Women in Technology event on June 9, 2017, sponsored by Commvault.  He replied, "What do you women do at these female events anyhow?"  Ms. Miller was taken aback as the keynote speaker was Meg Whitman, CEO of Hewlett Packard Enterprise, one of Commvault's most strategic customers.

32.     In the April – June 2017 time frame, Commvault management decided to remove Ms. Miller from her position.

33.     Mr. Malhotra found an alternative position for Ms. Miller in Field Marketing.

34.     Mr. Malhotra spoke with the Chief Marketing Officer and management in Field Marketing, and made arrangements for Ms. Miller to transfer to Field Marketing at her current salary.

35.     Ms. Malhotra arranged for Ms. Miller to transfer to the Field Marketing position because he thought she was highly qualified for the position.

36.     Ms. Miller was highly qualified for the Field Marketing position.

37.     In June 2017, Mr. Malhotra went to corporate headquarters and met with a representative of Human Resources, who said that Ms. Miller would not be permitted to transfer to the Field Marketing position because the decision had been made to let her go.

38.     On June 13, 2017, Ms. Miller had a regularly scheduled telephone call with Mr. Malhotra.  Lisa McGahran participated in the call.

39.     Mr. Malhotra advised Ms. Miller during this telephone call that that her "skill set" did not match the requirement for the direction of the organization and that she was being removed from her position and had thirty (30) days to find another position at Commvault.

40.     Ms. McGahran further told Ms. Miller that while she had great skills, Commvault needed someone with a more strategic as opposed to tactical approach to the business.

41.     Ms. Miller asked Ms. McGahran what would happen if she did not find another position within the thirty (30) day period and was advised that "severance options" would be discussed at that time.

42.     Mr. Malhotra contacted Plaintiff after the phone call on June 13, 2017 and stated that he was sorry this had happened to her, that he had done everything in his power to "save" her, and that it had not been his sole decision to remove her from her position, but a wider management decision.

43.     On June 15, 2017, Plaintiff spoke with Mr. Malhotra's manager, Dan Dufault who contradicted Mr. Malhotra's assertion and told Ms. Miller that the decision had been made by Mr. Malhotra.

44.     By email, dated June 20, 2017, Plaintiff wrote to Ms. McGahran and complained about age and gender discrimination as follows:

> I am following up on my conversation with you and Gaurav Malhotra on Tuesday, June 13, 2017. I am very disappointed about my termination, the terms of which I believe are unsupportable, and I believe this is due to my age and gender.
>
> ●     During the call on June 13, Gaurav informed me that my skill set does not match the direction of the group and that someone with a more "strategic" approach was needed.
>
> ●     This call occurred after only 4 months of direct supervision and 2 in-person meetings with Gaurav.
>
> ●     For the first three months reporting to Gaurav, until the first week of May 2017 (5 weeks into Q1 FY18), Gaurav repeatedly informed me that development of the FY18 strategic plan for Service Providers and Global System Integrators was on hold because we did not have a finalized, approved budget for FY18.
>
> ●     Gaurav did not ask me to take on any strategic roles, although I offered multiple times to work with him on the strategic plan.

● Gaurav has NEVER communicated to me what, if anything, I was lacking in skills.

● I have consistently met all quarterly KPIs established for my position; in fact, in our call, you and he confirmed that this decision was not motivated by my performance.

● I have not been counseled or told that I need to acquire new skills.

45. On June 22, 2017, by email to Mr. Dufault and Mr. Malhotra, Ms. Miller confirmed that she was transitioning her work to Mr. Broderick as directed as follows:

> As discussed, I have transitioned my GSI and SP account responsibilities to Bryan Broderick.
>
> I have also forwarded you both several emails from Roger Hamshaw and Jim Wren regarding my work with OnX, Fujitsu and NTT Data Services. Those emails are reflective of the strength and value of the customer relationships I've built, and the feedback I've received from customers and management regarding my performance and contribution to the business. I have several other samples that I would be happy to provide you.
>
> I question a business strategy that has the effect of disrupting these relationships.

46. On July 6, 2017, Plaintiff had a telephone conversation with Ms. McGahran who advised her that she had completed her investigation and found no discrimination. She reiterated that Ms. Miller was being terminated due to changes in the direction of the market and the perception that she was no longer the right person for the role. Ms. McGahran refused the share the details of her investigation with Ms. Miller.

47. Between June 13 and July 14, 2017, Ms. Miller applied for the positions of Senior Product Marketing Manager; Director, Campaigns; and Field Marketing Manager, Western Region.

48. Ms. Miller was highly qualified for the positions for which she applied.

49. Commvault did not select her for any of the positions due to her gender, age and protected activity.

50. Commvault has refused to pay Ms. Miller her quarterly variable compensation for the first quarter of 2018, even though she met her performance objectives (KPIs) for that quarter and earned a quarterly bonus.

51.     Ms. Miller was told by Defendant that the variable compensation would be paid, however, after she filed her Charge of Discrimination, Commvault reversed this decision and has refused to pay the variable compensation.

52.     After Plaintiff was discharged, Commvault selected a woman twenty (20) years younger to replace the Plaintiff.

53.     Ms. Miller learned that Commvault had recently taken similar actions against several other women within the protected age group.

54.     Defendant has excluded Ms. Miller from opportunities based on the stereotypes and subjective criteria that have prevented women from achieving their potential and in which Commvault continues to have a disproportionate lack of women in executive management positions within the company.

55.     As a result of Plaintiff's discharge, she lost her salary, benefits, Employee Stock Purchase Plan investment opportunities, 428 RSU's, and employer contributions under the 401(k) plan.

56.     Ms. Miller has suffered significant anxiety, humiliation, emotional distress and stress due to the discrimination and retaliation alleged above.

## IV.  CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF
## VIOLATION OF TITLE VII

57.     Plaintiff incorporates paragraphs 1 through 56 of this Complaint as if fully set forth herein.

58.     Defendant discriminated against Ms. Miller because of her sex in violation of 42 U.S.C. § 2000e *et seq.,*   by removing her from her position, not selecting her for other available positions for which she was qualified, terminating her from her position, and subjecting her to other adverse employment actions.

59.     The effect of the actions of Defendant has been to limit, classify and discriminate against Ms. Miller such that she has been deprived of employment opportunities because of her sex in violation of 42 U.S.C. § 2000e *et seq.*

60.     Ms. Miller has been damaged by the discriminatory actions of Defendant as alleged above by being deprived of income, continuing employment, and the opportunity for other employment benefits, in an amount to be proven at trial.

61.     Ms. Miller has suffered significant emotional distress as a result of Defendant's discriminatory actions against her.

8

62.     The discriminatory actions and inactions of Defendant alleged above were engaged in intentionally, and with malice or with a reckless indifference to Ms. Miller's civil rights.

63.     As a result of these discriminatory and unlawful actions, Plaintiff has suffered and continues to suffer damages, including both economic and non-economic losses.

## SECOND CLAIM FOR RELIEF
## VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT

64.     Plaintiff incorporates paragraphs 1 through 63 of this Complaint as if fully set forth herein.

65.     Defendant discriminated against Ms. Miller due to age her in violation of 29 U.S.C. 621 *et. seq.,* by removing her from her position, not selecting her for other available positions for which she was qualified, terminating her from her position, and subjecting her to other adverse employment actions.

66.     The effect of the actions of Defendant has been to limit, classify and discriminate against Ms. Miller such that she has been deprived of employment opportunities because of her age in violation of 29 U.S.C. § 621 *et seq.*

67.     Ms. Miller has been damaged by the actions of Defendant as alleged above by being deprived of income, continuing employment, and the opportunity for other employment benefits, in an amount to be proven at trial.

68.     Ms. Miller has suffered significant emotional distress as a result of Defendant's age discrimination against her.

## THIRD CLAIM FOR RELIEF
## RETALIATION

69.     Plaintiff incorporates paragraphs 1 through 68 of this Complaint as if fully set forth herein.

70.     Defendant retaliated against Ms. Miller due to her complaints about gender and age discrimination in violation of 29 U.S.C. 621 *et. seq.,* and 42 U.S.C. § 2000e *et seq.*, by not selecting her for other available positions for which she was qualified, terminating her from her position, refusing to pay variable compensation to her and subjecting her to other adverse employment actions.

71.     The effect of the actions of Defendant has been to limit, classify and discriminate against Ms. Miller such that she has been deprived of employment opportunities because of her protected activity in violation of 29 U.S.C. § 621 *et seq.* and 42 U.S.C. § 2000e *et seq.*

72.     Ms. Miller has been damaged by the actions of Defendant as alleged above by being deprived of income, continuing employment, and the opportunity for other employment benefits, in an amount to be proven at trial.

73.     Ms. Miller has suffered significant emotional distress as a result of Defendant's retaliation against her.

## FOURTH CLAIM FOR RELIEF
## BREACH OF CONTRACT

74.     Plaintiff incorporates paragraphs 1 through 73 of this Complaint as if fully set forth herein.

75.     Defendant adopted a Variable Compensation Plan governing Ms. Miller's compensation.

76.     Under the Variable Compensation Plan, Ms. Miller earned variable compensation by attaining 100% of her Plan goals.

77.     Ms. Miller attained 100% of her Plan goals for the 4th Quarter of 2017.

78.     As a result, Ms. Miller was entitled to variable compensation for the 4th Quarter of 2017.

79.     Commvault materially breached its contractual obligations to Ms. Miller by failing and refusing to pay her variable compensation to her in the 4th Quarter of 2017 even though she met her Plan goals.

80.     Due to Commvault's breach of its contractual obligations, Ms. Miller has suffered damages.

## FIFTH CLAIM FOR RELIEF
## BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

81.     Plaintiff incorporates paragraphs 1 through 80 of this Complaint as if fully set forth herein.

82.     Ms. Miller performed services for Defendant.

83.     By failing to pay Ms. Miller variable compensation for the 4th Quarter of 2017, even though she met her Plan goals, Defendant breached a covenant of good faith and fair dealing with Ms. Miller.

84.     Ms. Miller has been damaged by Defendant's conduct.

## SIXTH CLAIM FOR RELIEF
## COLORADO WAGE ACT

85.   Plaintiff incorporates paragraphs 1 through 84 of this Complaint as if fully set forth herein.

86.   Defendant failed to pay Plaintiff wages as defined by the Colorado Wage Act.

87.   The variable compensation identified in this Complaint had been earned by Ms. Miller as of the date of her discharge.

88.   The variable compensation identified in this Complaint were determinable as of the date of Ms. Miller's discharge.

89.   After her discharge, Ms. Miller demanded payment of the wages from Defendant.

90.   Defendant did not pay all wages to Ms. Miller as required in Ms. Miller's demand for wages.

91.   Defendant violated its obligations under the Colorado Wage Act.

92.   Defendant's violation of the Wage Act was willful.

93.   Plaintiff is entitled to recover penalties under the Wage Act due to Defendant's failure to pay earned, vested and determinable wages to Plaintiff.

**PLAINTIFF HEREBY DEMANDS TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

WHEREFORE, Plaintiff Nancy Miller respectfully moves this court and prays for:

a.   Damages for past and future lost wages and benefits and for lost employment opportunities, and other compensatory damages, in an amount to be proven at trial;

b.   Damages for emotional distress incurred by Ms. Miller due to the discriminatory and tortious practices of Defendant, in an amount to be proven at trial;

c.   Compensatory damages, including physical/medical injury and harm, emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life, in a sum to be determined by the court and jury;

d.   Penalties under the Colorado Wage Act;

e.   Attorneys' fees and litigation costs;

f.      Pre- and post-judgment interest;

g.      Such other relief as the Court may deem appropriate.

DATED this 30th day of October, 2018.

Respectfully submitted,

BAIRD QUINN LLC

*Original signature on file with firm*


/s/ J. Mark Baird
J. Mark Baird